# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **TOYIA VINSON and TRISHA JAN BROWN,** *Plaintiffs*, v. **MACON-BIBB COUNTY; SAMUEL "WADE" MCCORD,** in his individual and official capacity as the Tax Commissioner and former Assistant Tax Commissioner; and **THOMAS TEDDERS,** in his individual and official capacity as the former Tax Commissioner, *Defendants.* | **CIVIL ACTION NO.** **5:18-cv-00306-TES** |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiffs Toyia Vinson and Trisha Jan Brown are both African-American employees of the Macon-Bibb County Tax Commissioner's Office. In their Complaint, they assert employment discrimination claims based on race and retaliation against the Macon-Bibb County Tax Commissioner's Office, current Tax Commissioner and former Assistant Tax Commissioner S. Wade McCord, and former Tax Commissioner Thomas Tedders under 42 U.S.C. § 1981[1] and Title VII. After filing their Answer and Amended

---

[1] For clarity's sake, the Court notes, consistent with Plaintiffs' pleading, that their § 1981 claims effectively merge into § 1983 claims for race discrimination. This occurs because the "express 'action at law' provided

Answer [Docs. 9, 11], Defendants filed a Partial Motion to Dismiss for Failure to State a Claim [Doc. 10].

## FACTUAL BACKGROUND

The facts of this case are simple, and unless otherwise noted, are taken from Plaintiffs' Complaint and assumed to be true for the purposes for ruling on Defendants' motion.[2] Plaintiff Vinson began her employment with the Macon-Bibb County Tax Commissioner's Office as a Tax Office Clerk Trainee on January 16, 1993, while Plaintiff Brown, however, began her employment as a Tax Clerk Trainee on October 16, 2000. [Doc. 1 at ¶¶ 11–12]. Both Plaintiff Vinson and Plaintiff Brown currently hold the position titles of "Accounting Clerk III." [*Id.* at ¶ 13]. In 2014, Tedders posted a hiring notice for the Staff Accountant position. [*Id.* at ¶ 14]. However, Tedders hired Thelma Bass, a white woman, for the position. [*Id.* at ¶ 16]. Because Tedders hired Bass, Plaintiffs claim that the tax commissioners, throughout their respective tenures, discriminated against them "by

---

by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Busby v. City of Orlando*, 931 F.2d 764, 771 n.6 (11th Cir. 1991). Stated another way, state actors cannot be sued for constitutional violations outside the purview of § 1983. *Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000).

[2] Throughout their Complaint, Plaintiffs incorrectly make a wholistic reference to "Macon-Bibb County Tax Commissioner's Office," "McCord," and "Tedders" as "Defendants," collectively. *See generally* [Doc. 1]. However, it is obvious that McCord, as the Assistant Tax Commissioner in 2014, could not have posted the hiring notice at issue—that obligation fell to the elected official at the time, Tedders. By that same token, the "Defendants" as a whole, in 2014, could not have stated that the "position required an accounting degree." [*Id.* at ¶ 15]. Purely to clarify its analysis, the Court—using the timeline of events provided by Plaintiffs in their Complaint—identified which Defendant allegedly "did" the complained-of discriminatory act.

2

passing over them for a promotion, paying them less than their white [counterparts] for the same work, and discriminately denying them equal pay raises" and also "retaliat[ing] against [them] by changing their job duties" after they "complained to [McCord] about the discrimination." [*Id.* at ¶¶ 24–25].

The Court's succinct factual background encompasses the global issues concerning the partial dismissal motion currently before it. Undoubtedly, there are several additional facts[3] that may be relevant to Plaintiffs' claims in any forthcoming motion for summary judgment. However, given the nature of the issues presented in the current motion, issues involving the specific facts related to the job posting from the Tax Commissioner's Office, the job duties themselves, and Bass's qualifications—which seem to be the crux of Plaintiffs' claims—are, at this time, irrelevant. For purposes of this motion, Plaintiffs have undoubtedly alleged race-centered employment discrimination claims based on failure to promote, unequal pay, discriminatory pay raises, and retaliation. However, the narrow question before the Court on this motion is who can be held liable for those claims and in what capacity.

---

[3] For example, in their Complaint, Plaintiffs allege that "Defendants stated that the position required an accounting degree" and that "because they did not have an accounting degree" they "did not apply for the position." [Doc. 1 at ¶¶ 14–15]. However, according to an exhibit attached to Defendants' Amended Answer [Doc. 11], the "Job Description" for the "Accountant" position clearly stated, "Bachelors [*sic*] Degree in Business with concentration in Accounting preferred or ten years of work experience which provides the knowledge, skills and abilities to successfully perform the duties and responsibilities of the position." [Doc. 11-5 at p. 1]. Given that the motion before the Court falls under Federal Rule of Civil Procedure 12(b)(6), the Court could not and did not consider this exhibit—because it is attached to the *Defendants'* Answer. *See Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005).

# DISCUSSION

## A. Standard of Review

Defendants seek to dismiss certain claims against them for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). When ruling on a 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scheuer*, 468 U.S. 183 (1984). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556. "Accordingly, the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th

Cir. 1993). With the foregoing standard in mind, and taking the facts asserted in Plaintiffs' Complaint regarding claims of employment discrimination based on race and retaliation as true, the Court rules on Defendants' Partial Motion to Dismiss.

B.  **Defendants' Partial Motion to Dismiss [Doc. 10]**

In its most general sense, the motion before the Court seeks dismissal of all claims asserted against Macon-Bibb County and Tedders. [Doc. 10-1 at p. 1]. McCord, however, only seeks dismissal of claims asserted against him in his individual capacity. [*Id.*]; *see also* n.7, *infra*.

1.  Plaintiffs' Claims Against Macon-Bibb County

As a preliminary matter, the Court dismisses all claims asserted against Macon-Bibb County. Under Georgia law, it is well-established that employees of constitutionally elected officers of a county are considered employees of the elected officer, not employees of the county. *Boswell v. Bramlett*, 549 S.E.2d 100, 102 (Ga. 2001). To explain its reasoning in *Boswell*, the Georgia Supreme Court cited a case from 1979, holding that "a person employed by the Tax Commissioner of Polk County (a constitutionally elected officer of the county) was an employee of the tax commissioner and was therefore not subject to work regulations established by the county governing authority for all employees paid from county funds." *Id.* (citing *Mobley v. Polk Cnty.*, 251 S.E.2d 538, 541 (Ga. 1979)).

Moreover, the Georgia Constitution "distinguishes between county employees and employees of elected officials." *Id.* For example, "Article IX, Sec. I, Par. IV, which

5

preserves the distinction between county employees and the employees of elected officials, provides that the General Assembly may authorize the establishment of civil service systems by county governments 'covering county employees or county employees *and employees of elected county officials*.'" *Id.* (emphasis added) (quoting *Gwinnett Cnty. v. Yates*, 458 S.E.2d 791 (Ga. 1995)). Furthermore, the Georgia Constitution also "limits the power of the county governing authority such that it cannot take action 'affecting any elective county office . . . .'" *Channell v. Houston*, 699 S.E.2d 308, 311–12 (Ga. 2010) (quoting Ga. Const. of 1983 art. IX, § II, ¶ I(c)(1)). Because a county does not control elective officers and their offices, Plaintiffs' Complaint fails to identify any factual or legal basis for any relief whatsoever against Macon-Bibb County. Thus, the Court **DISMISSES** all of Plaintiffs' claims asserted against it. Further, the Court **DIRECTS** the Clerk of Court to **TERMINATE** Macon-Bibb County (or as named in Plaintiffs' Complaint: Macon-Bibb County Tax Commissioner's Office) as a party to this lawsuit. *See* [Doc. 1 at ¶ 1].

    2.    <u>Plaintiffs' Title VII Claims Against Defendants McCord and Tedders</u>

Having dismissed Macon-Bibb County as a party to this lawsuit, the Court next addresses Plaintiffs' conceded claims. Plaintiffs withdrew their Title VII claims brought against Defendants McCord and Tedders in their individual capacities. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) ("Individual capacity suits under Title VII are . . . inappropriate. The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act."); *see also*

6

[Doc. 15 at p. 6, n.2]. Additionally, Plaintiffs, in their Response to Defendants' motion, admit that their failure-to-promote claims brought under Title VII are time-barred for failure to exhaust administrative remedies through the Equal Employment Opportunity Commission ("EEOC"). [Doc. 15 at p. 10, n.3]. Accordingly, the Court **DISMISSES** Plaintiffs' Title VII failure-to-promote claims asserted against Defendants McCord and Tedders in both their individual and official capacities.

Secondly, the Court turns its attention to the unequal pay, discriminatory pay-raise, and retaliation claims under Title VII asserted against Defendant Tedders in his official capacity. To start, "Tedders was the elected Tax Commissioner from 2004 through August 31, 2015." [Doc. 1 at ¶ 9]. From the face of the Complaint, it appears that "Plaintiffs were unaware of the pay discrepancy between themselves and Bass until *November 2014*," when employee salaries were posted on the county's website. [*Id.* at ¶ 21] (emphasis added). Essentially, Plaintiffs first became aware of *some* pay discrepancy in November of 2014. Thus, as Plaintiffs acknowledge, they had 180 days to file their EEOC Charges of Discrimination to seek recovery for any pay discrepancy that occurred prior to November 2014. *See* [Doc. 15 at p. 10 (citing *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 692 (5th Cir. 1982))]. Because Plaintiffs' Complaint lacks any factual allegation that they filed such a Charge for the "challenged act" of unequal pay or failure to receive equal pay raises from discovery of the discrepancy in November of 2014, those claims against Defendant

7

Tedders in his official capacity are time-barred for failure to exhaust administrative remedies through the EEOC, and the Court **DISMISSES** them.

Furthermore, Plaintiffs' claim for retaliation under Title VII against Defendant Tedders in his official capacity must be dismissed as well. Plaintiffs' allegations related to their retaliation claim unequivocally state that "[t]hroughout the end of 2017 and 2018, Plaintiffs complained to [McCord] about the discrimination, including filing a Charge of Discrimination with the EEOC in January of 2018. Instead of correcting their pay practices, [*McCord* allegedly] retaliated against Plaintiffs by changing their job duties."[4] [Doc. 1 at ¶ 25]. Clearly, any alleged retaliation necessarily occurred after the Plaintiffs made their complaints (January of 2018) when Defendant Tedders was not the Tax Commissioner (and hence not their employer), so that he could not have retaliated against Plaintiffs.[5] [*Id.* at ¶¶ 25–26]; *see also* [Docs. 10-2 at p. 1, 10-4 at p. 1]. Therefore, he cannot be liable for any alleged retaliation as a result of Plaintiffs filing their respective EEOC Charges and the Court **DISMISSES** Plaintiffs' retaliation claim under Title VII against Defendant Tedders in his official capacity. As a result, Defendant Tedders is an improperly-named Defendant for Title VII purposes and the Court **DISMISSES** all of Plaintiff's Title VII claims against him in his official capacity. Thus, only the following

---

[4] Plaintiffs filed this EEOC Charge with regards to their discovery of pay and raise discrepancies in *November 2017*. [Doc. 1 at ¶ 23].

[5] Additionally, under Title VII, only employers can be liable for retaliation. As discussed above, Plaintiffs are considered employees of the Tax Commissioner and because Tedders was not the Tax Commissioner after August 31, 2015, he was not their employer and thus could not have retaliated against them.

8

claims are permitted to proceed forward under Title VII: Plaintiffs' claims for unequal pay, discriminatory pay raises, and retaliation against Defendant McCord in his official capacity.

### 3. Plaintiffs' § 1983 Claims Against Defendants McCord and Tedders

In their Complaint, Plaintiffs also assert a failure-to-promote claim, claims for unequal pay and discriminatory pay raises, and a retaliation claim under 42 U.S.C. § 1981 (§ 1983) against Defendants McCord and Tedders in their individual and official capacities. [Doc. 1 at pp. 8–12]. Plaintiffs contend that in 2014, Defendant Tedders posted a hiring notice for a Staff Accountant position and they admit that they "did not apply for the position" because "Defendants stated that the position required an accounting degree." [*Id.* at ¶¶ 14–15]. Plaintiffs claim that they were passed over for a promotion "based upon their race" when Defendants hired a white woman without an accounting degree or the requisite skill-set for the Staff Accountant position. [Doc. 1 at ¶ 16].

The legal bases for race discrimination claims are brought via 42 U.S.C. § 2000e ("Title VII") and 42 U.S.C. § 1981 ("§ 1981 (§ 1983)"), and § 1981 (§ 1983) claims are analyzed under Title VII's framework. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (explaining that claims under Title VII and § 1981 (§ 1983) "have the same requirements of proof and use the same analytical framework"). Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

9

individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Like Title VII, § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Regardless of whether a plaintiff is proceeding under Title VII or § 1981 (§ 1983), it is the plaintiff who bears the burden of establishing a prima facie case of race discrimination. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997).

### a. Failure to Promote Claim

To establish a prima facie case of discriminatory failure to promote, a plaintiff must prove: (1) that she is a member of a protected class; (2) that she was qualified for *and applied for the promotion*; (3) that she was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997) (emphasis added). Succinctly put, Plaintiffs' failures to formally apply for the Staff Accountant position are fatal to their § 1981 (§ 1983) race discrimination claim for failure to promote. *If* Plaintiffs—notwithstanding Defendants' statement "that the position required an accounting degree"—still would have applied for the position, fully aware that neither of them possessed an accounting degree and Defendants *then* hired someone outside of their protected class who also lacked an accounting degree, they would have undoubtedly met

their burden and established a prima facie case of race discrimination based on a failure to promote. But because Plaintiffs admit that they "did not apply for the position," they cannot prove each of the requisite elements for a failure-to-promote claim and their race discrimination claim for failure to promote asserted via § 1981 (§ 1983) against Defendants Tedders and McCord fails as a matter of law and must be **DISMISSED**. [Doc. 1 at ¶ 15].

Alternatively, Plaintiffs' failure-to-promote claims may also be dismissed for untimely filing under a statute-of-limitations analysis. Plaintiffs' § 1981 (§ 1983) claims present a unique circumstance. Generally speaking, Defendants argue that Plaintiffs' § 1981 (§ 1983) claims are subject to a two-year statute of limitations period, but Plaintiffs assert that their claims fall within a four-year limitations period. [Docs. 10-1 at p. 9, 15 at p. 13]. To support their argument, Defendants contend that "[i]n Georgia, the proper limitations period for all [§ 1981 (§ 1983)] claims is the two-year period set forth in [Ga. Code Ann.] § 9-3-33 for personal injuries." [Doc. 10-1 at p. 9 (quoting *Inman v. State Bar of Ga.*, 611 F. App'x 579, 581 (11th Cir. 2015))]. Plaintiffs, on the other hand, argue that because their "[§ 1981 (§ 1983)] claims . . . are not claims that were covered by § 1981 until after the amendment [to the Civil Rights Act] in 1990, [they] have a four[-]year statute of limitations." [Doc. 15 at p. 13].

To begin, when a plaintiff asserts a § 1981 (§ 1983) claim, district courts must determine if the cause of action arose prior to, or after, the Civil Rights Act of 1991,

because different statutes of limitations will apply. *See* [Doc. 18 at p. 10 (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004))]. Defendants argue that a claim asserting a civil cause of action that was available prior to the enactment of the Civil Rights Act of 1991 is governed by a two-year statute of limitations, while a claim asserting a cause of action that arises after the adoption of the Civil Rights Act of 1991 will be governed by a four-year statute of limitations. [Doc. 18 at p. 10]; *see also* 28 U.S.C. § 1658(a).

Determining which statute of limitations period will apply requires a history lesson of congressional actions and judicial interpretation, going back to the mid-to-late 1980s. Prior to the passage of the Civil Rights Act of 1991, § 1981 simply provided that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a) (1991). However, the Civil Rights Act of 1991 added subsection (b), where Congress broadly expanded the language "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." *Id.* at § 1981(b). Congress's addition of (b) in § 1981 overturned the Supreme Court's decision in *Patterson v. McLean Credit Union*, which had "narrowly construed the protective reach of [§ 1981] to prohibit race discrimination 'only [in] the formation of a contract, but not [in] problems that may arise later from the conditions of continuing employment.'" *Barr v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 4:17-cv-203,

2019 WL 1099791, at *6 (S.D. Ga. Mar. 8, 2019) (second and third alterations in original) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 176 (1989)). Before this amendment, courts were to utilize the most analogous state statute of limitations with respect to § 1981 (§ 1983) claims. *Id.* (citing *Goodman v. Lukens Steel Co.*, 482 U.S. 56, 661–62 (1987)).

However, in *Jones v. R.R. Donnelley & Sons Co.*, the Supreme Court determined that § 1981 (§ 1983) claims that were made possible by enactment of the Civil Rights Act of 1991 and § 1981(b) are "subject to the default four-year statute of limitations period for federal causes of action as set forth in 28 U.S.C. § 1658(a)." *Barr*, 2019 WL 1099791, at *6 (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 374–80 (2004)). In *Jones*, the Court explained that "to the extent Congress created new causes of action not previously cognizable under [§ 1981 (§ 1983)], such claims are subject to the four-year 'catch-all' statute of limitations provided by § 1658(a)." *Id.* (quoting *Jones*, 451 U.S. at 380–83)). But any cause of action that existed prior to the enactment of § 1981(b), the usual practice of borrowing the relevant statute of limitations would apply. *Id.* (citing *Edwards v. Nat'l Vision, Inc.*, 568 F. App'x 854, 860 (11th Cir. 2014) (per curiam)). Thus, in Georgia, the state's two-year statute of limitations for personal injuries pursuant to Ga. Code Ann. § 9-3-33 will control any of Plaintiffs' § 1981 (§ 1983) causes of action that existed prior to the 1991 amendment. *Id.* (citations omitted).

13

In 1989, the Supreme Court concluded that § 1981 "cover[ed] only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Id.* at *7 (quoting *Patterson*, 491 U.S. at 179) (alteration in original) (articulating the pre-1991 ambit of § 1981). "A failure to promote claim under [§ 1981 (§ 1983)] was actionable only where a promotion rose 'to the level of an opportunity for a new and distinct relation between the employee and the employer.'" *Id.* (quoting *Patterson*, 491 U.S. at 185). Therefore, in the context of "new employment relationship," § 1981 (§ 1983) "failure-to-promote claims were cognizable prior to the 1991 amendment and are subject to a two-year statute of limitations." *Id.* (citing *Edwards*, 568 F. App'x at 860).

Given that the claims set forth in Plaintiffs' Complaint regarding the Staff Accountant position clearly created "an opportunity for a new and distinct relation between" Plaintiffs and their employer, Georgia's two-year statute of limitations applies to Plaintiffs' failure-to-promote claims asserted under § 1981 (§1983). *Compare* [Doc. 1 at ¶ 13] *with* [Doc. 1 at ¶ 14] (discussing position titles of "Accounting Clerk III" versus "Staff Accountant"). Here, Plaintiffs first learned of Bass's lack of qualifications in November of 2014. [Doc. 1 at ¶ 21]. Thus, applying Georgia's two-year limitations period, any race discrimination claims alleging a failure to promote must have been filed by November of 2016, and because Plaintiffs filed their lawsuit on August 21, 2018, their failure-to-promote claims under § 1981 (§ 1983) are untimely. [Doc. 1 at p. 13].

### b. *Unequal Pay and Discriminatory Pay-Raise Claims*

Secondly, the Court examines Plaintiffs' unequal pay and discriminatory pay-raise claims asserted in their Complaint. Whether these claims are subject to the four-year limitations period provided by 28 U.S.C. § 1658 or the two-year limitations period under Ga. Code Ann. § 9-3-33 "depends on the compensation alleged to have been discriminately made or refused." *Barr*, 2019 WL 1099791, at *8. If an unequal pay claim arises out of an employee's initial compensation, determined at the formation of the employment contract, that claim will be governed by the two-year limitations period. *Id.* (citing *Palmer v. Stewart Cty. Sch. Dist.*, 215 F. App'x 822, 824 (11th Cir. 2007) (per curiam)). But if the unequal pay claim "arises from an employer's subsequent compensation decisions, regarding an already employed individual, it is governed by the four-year [limitations period]." *Id.* (citing *Smith v. Trane U.S., Inc.*, No. 6:11-CV-36, 2011 WL 4944143, at *4–5 (S.D. Ga. Oct. 17, 2011)); *see also Palmer*, 215 F. App'x at 824 (finding unequal pay claim subject to two-year limitations period where the plaintiff "did not allege any wrongdoing regarding salary modifications"). In short, if "discriminatory pay raises, cuts, or other modifications involve post-contract formation conduct that was not actionable under [§ 1981 (§ 1983)] until the 1991 amendment, claims based on these discrete acts are subject to the four-year [limitations period]." *Id.*

In their Complaint, Plaintiffs state that Defendants violated their federal rights "by . . . paying them less than their white [counterparts] for the same work," and "in failing

15

to . . . equally pay[ ] and give raises to Plaintiffs based upon their race." [Doc. 1 at ¶¶ 36, 42]. Because both Plaintiffs were hired, at the latest by October 16, 2000, and they "were unaware of the pay discrepancy between themselves and Bass until November 2014," and again in November of 2017 after two county-wide raises in 2015 and 2016, their unequal pay claims "involve post-contract formation conduct" and is subject to the four-year limitations period. *Barr*, 2019 WL 1099791, at *8; *see also* [Doc. 1 at ¶¶ 11–12, 21, 23]. Thus, applying 28 U.S.C. § 1658's catch-all limitations period of four years, discussed above, Plaintiffs' unequal pay claims asserted under § 1981 (§ 1983) against Defendants McCord and Tedders in their individual and official capacities are timely.

Because the four-year limitations period saves Plaintiffs' unequal pay and discriminatory pay-raise claims, the Court quickly answers whether Plaintiffs have stated a sufficient claim to survive Defendants' "pleading-attack" leveled on their Complaint. To allege a prima facie unequal pay case under § 1981 (§ 1983), a plaintiff must assert that she held a position similar to that of a higher paid employee who was not a member of her protected class. *Barr*, 2019 WL 1099791, at * 10 (citing *Crawford v. Carroll*, 529, F.3d 961, 974–75 (11th Cir. 2008)). And, to allege that she held a "similar position," a plaintiff must point to a comparator and must show that she and that comparator are "similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, ____ F.3d. ____ (11th Cir. 2019). The allegations in Plaintiffs' Complaint are certainly sufficient to withstand dismissal based on traditional pleading standards from Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs make allegations that they, and Bass, did "the same work"; therefore, Plaintiffs' unequal pay and discriminatory pay-raise claims asserted against Defendants Tedders and McCord are permitted to proceed for further factual development. [Doc. 1 at ¶¶ 24, 42]. However, the Court limits these claims against Defendant Tedders to claims occurring between August 22, 2014[6] and August 31, 2015, for the simple fact that Defendant Tedders was no longer the Tax Commissioner after August 31, 2015. [Doc. 1 at ¶¶ 9–10]. By that same token, any unequal pay or discriminatory pay-raise claims asserted via § 1981 (§ 1983) asserted against Defendant McCord must be limited to his time of service as the elected Tax Commissioner—September 1, 2015, to present.

    *c.*    *Retaliation*

Finally, Plaintiffs' retaliation claims are easily pierced. For the same reason the Court dismissed Plaintiffs' retaliation claims brought under Title VII against Defendant Tedders—because he was not the tax commissioner at the time ("[t]hroughout the end of 2017 and 2018") of the alleged retaliation and thus could not have been the retaliating employer—their retaliation claims brought under § 1981 (§ 1983) against him are dismissed as well. [Doc. 1 at ¶ 25–26]. Accordingly, the Court **DISMISSES** Plaintiffs' retaliation-based discrimination claims under § 1981 (§ 1983) asserted against Tedders in both his individual and official capacities. Plaintiffs' race discrimination claim based on

---

[6] Plaintiffs filed their lawsuit on August 21, 2018. [Doc. 1 at p. 13]. Thus, applying a four-year limitations period to their unequal pay and discriminatory pay-raise claims, such claims against Tedders could only reach back to August 22, 2014.

retaliation asserted against Defendant McCord in both his individual[7] and official[8] capacities is permitted to proceed forward.

## **CONCLUSION**

Based on the foregoing, only the following claims are permitted to proceed:

---

[7] Although Defendant McCord seeks dismissal of Plaintiffs' claims in his "individual capacity only," seemingly for both Title VII liability and liability under § 1981 (§ 1983), his arguments only pertain to individual-capacity dismissal under Title VII. [Doc. 10-1 at p. 1] (emphasis omitted); *see also* [Doc. 10-1 at pp. 4–5]. However, individual-capacity suits under § 1981 (§ 1983) seek to impose personal liability upon a government official for actions he takes under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "[T]o establish individual liability in a § 1983 action, it is enough to show that the official, acting under the color of state law, caused the deprivation of a federal right." *Graham*, 473 U.S. at 166 (citing *Monroe v. Pape*, 365 U.S. 167 (1961)). More, however, is required in an official-capacity action, a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation, thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (internal quotations omitted) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 693–94 (1978)).

When it comes to defenses to liability, an official in an individual-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. *Graham*, 473 U.S. at 166–67; *see also Imbler v. Pachtman,* 424 U.S. 409 (1976) (absolute immunity); *Pierson v. Ray,* 386 U.S. 547 (1967) (same); *Harlow v. Fitzgerald,* 457 U.S. 800 (1982) (qualified immunity); *Wood v. Strickland,* 420 U.S. 308 (1975) (same). In an official-capacity action, these defenses are unavailable. *Owen v. City of Independence,* 445 U.S. 622 (1980); *see also Brandon v. Holt,* 469 U.S. 464 (1985). The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity may possess, such as that found in the Eleventh Amendment.

[8] Case law is clear that "[t]he Eleventh Amendment insulates a state from suit brought by individuals in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity." *Stevens v. Gray*, 864 F.2d 113, 114 (11th Cir. 1989). Furthermore, "[a] lawsuit against a state agency or employee in its *official capacity* is no different than a suit against the state itself[, and] such defendant is immune." *Barr*, 2019 WL 1099791 at *5 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Because Congress, in enacting § 1981, or 42 U.S.C. § 1983 for that matter, did not abrogate a state's "well-established immunities or defenses" provided by the Eleventh Amendment, Plaintiffs' § 1981 claims asserted against Defendants McCord and Tedders in their official capacity are subject to dismissal. Although Defendants asserted "the defense of Eleventh Amendment immunity" in their Amended Answer [Doc. 11 at p. 5], their arguments in support of their dismissal motion did not raise Eleventh Amendment immunity, and the Court cannot sua sponte dismiss official capacity claims when a party fails to present any argument related to an immunity defense. *Bouchard Transp. Co. v. Fla. Dep't of Envtl. Protection*, 91 F.3d 1445, 1448 (11th Cir. 1996) (discussing that although the Eleventh Amendment is a threshold issue, the Supreme Court has held that it is not jurisdictional in the sense that a court must address Eleventh Amendment issues sua sponte) (citing *Patsy v. Bd. of Regents*, 457 U.S. 496, 515 n.19 (1982)).

- Plaintiffs' Title VII race discrimination claims based on unequal pay, discriminatory pay raises, and retaliation asserted against Defendant McCord in his official capacity;

- Plaintiffs' § 1981 (§ 1983) race discrimination claims for unequal pay and discriminatory pay raises asserted against Defendants McCord and Tedders (subject to the limitations outlined above) in their individual and official capacities; and,

- Plaintiffs' § 1981 (§ 1983) race discrimination claim for retaliation asserted against Defendant McCord in his individual and official capacities.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Partial Motion to Dismiss [Doc. 10].

**SO ORDERED**, this 4th day of April, 2019.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**